# EXHIBIT 3

# RESTATED EMPLOYEES BENEFIT AGREEMENT AND TRUST FOR THE NATIONAL ELECTRICAL BENEFIT FUND

**WHEREAS**, the International Brotherhood of Electrical Workers and the National Electrical Contractors Association, Inc. (the "Parties") originally entered into the Employees Benefit Agreement ("Agreement") on September 3, 1946, for the purpose of providing retirement and related benefits to employees in the electrical contracting industry and employees in other branches of the electrical industry; and

**WHEREAS**, the Agreement has been amended several times since it was originally entered into and the Parties hereby desire to further amend it and to restate it; and

**WHEREAS**, among other matters, the present restatement and amendment shall revise the name of the Agreement to be the "Restated Employees Benefit Agreement and Trust," in order to reflect the fact that the Agreement has embodied, and will continue to embody, not only the Parties' collective bargaining agreement, but also, the basic agreement and declaration of trust for the National Electrical Benefit Fund; and

**WHEREAS**, the Parties recognize that while the program of benefits payable from the National Electrical Benefit Fund (the "NEBF") has heretofore been set forth in Article III-B and Appendix A of the Agreement, hereafter, by this restatement and further amendment to the Agreement, such benefits, while continuing to be paid by the NEBF, shall be set forth in a separate plan document entitled the "Plan of Benefits for the NEBF."

**NOW, THEREFORE**, in consideration of the premises and mutual covenants and agreements herein contained, it is hereby agreed as follows:

## PART I
## COLLECTIVE BARGAINING AGREEMENT

The Parties agree as follows:

**Provision 1.** The International Brotherhood of Electrical Workers and the National Electrical Contractors Association, Inc. have been and shall continue as plan sponsors of the NEBF and shall execute this Restated Employees Benefit Agreement and Trust for the NEBF.

**Provision 2.** This Agreement, including the collective bargaining agreement provisions, became effective on October 1, 1946, and has continued in effect thereafter on a calendar year basis. This Part I, constituting the Parties' collective bargaining agreement, shall continue in effect from year to year hereafter from January 1 to December 31 in each consecutive year, except as amended or terminated as provided below.

**Provision 3.** All collective bargaining agreements or other agreements covering construction employees entered into by the Brotherhood, or by any of its Local Unions, with Electrical Contractors (as such terms are defined in Sections 1.5, 1.13, and 1.10, respectively), shall, consistent with applicable law, require such Electrical Contractors to make contributions to the NEBF and to recognize and bind themselves to this Agreement.

**Provision 4.** Each Covered Employer (as defined in Section 1.8) shall contribute an amount equal to 3% of the gross labor payroll paid to, or accrued by, each Covered Employee (as defined in Section 1.7) as fully set forth in Part II of this Agreement.

**Provision 5.** The provisions of this Part I shall be subject solely to the joint interpretation of the Parties.

**Provision 6.**

(a) The provisions of this Part I shall be subject to revision or amendment solely by the Parties. Either party desiring to revise or amend the provisions in this Part I shall notify the other in writing at least ninety (90) days prior to January 1 of any year. The nature of the revision or amendment shall be specified in the notice. The provisions in this Part I may be revised or amended at any time by mutual consent of the Parties.

(b) This Part I shall be subject to termination solely by the Parties. Either Party desiring to terminate this Part I shall notify the other in writing at least ninety (90) days prior to January 1 of any year. This Part I may be terminated at any time by mutual consent of the Parties. This Part I shall terminate if the NEBF is terminated under Article 7 of Part II of this Agreement.

## PART II
## AGREEMENT AND DECLARATION OF TRUST

The Parties, as trustors, agree as follows:

### ARTICLE 1. DEFINITIONS

The following capitalized terms when used herein, if not otherwise defined, shall have the following meanings:

**Section 1.1 Act.** "Act" means the Employee Retirement Income Security Act of 1974, any amendments as may from time to time be made and any lawful regulations promulgated pursuant to the provisions of the Act.

**Section 1.2 Agreement.** "Agreement" means the Employees Benefit Agreement, initially entered into by the Parties on September 3, 1946, as it has been amended, including the amendments and restatement effectuated by this instrument, and including all amendments and modifications as may from time to time be made hereafter.

**Section 1.3 Association.** "Association" means the National Electrical Contractors Association, Inc.

**Section 1.4 Beneficiary.** "Beneficiary" means a person other than a Participant who is or may become entitled to a benefit from the NEBF under the terms of the Plan.

**Section 1.5 Brotherhood.** "Brotherhood" means the International Brotherhood of Electrical Workers.

**Section 1.6 Code.** "Code" means the Internal Revenue Code of 1986, as amended.

**Section 1.7 Covered Employee.** "Covered Employee" means any employee of a Covered Employer with respect to whom the Covered Employer is obligated consistent with this Agreement to make contributions to the NEBF.

**Section 1.8 Covered Employer.** "Covered Employer" means:

**1.8.1** An employer who is a member of, or who is represent-

ment, and (c) that the Trustees were duly authorized and empowered to execute the instrument.

**Section 5.28 <u>Amendment of Agreement</u>.** The Trustees are not authorized to amend this Agreement, except as provided herein. The Trustees are authorized to amend Part II of this Agreement, prospectively or retroactively, where they deem it necessary to maintain the continuation of the NEBF's tax exempt status under Federal Tax Law and to preserve compliance with the Act or other applicable law, and any regulations or rulings issued with respect thereto.

**Section 5.29 <u>Amendment of Plan</u>.** The Trustees are authorized to amend the Plan, prospectively or retroactively, where they deem it necessary to maintain the continuation of the NEBF's tax exempt status or the Plan's qualified status under Federal Tax Law or to otherwise preserve compliance with the Act or other applicable law, and any regulations or rulings issued with respect thereto. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain the determination of the qualified status of the NEBF and Plan. The Trustees are also generally authorized to amend the Plan, except where expressly limited as provided herein. Amendments with regard to increases in benefits may only be made jointly by the Trustees and the National Board and, at the time of the adoption of the amendment, a report by the NEBF's actuary must indicate that in the actuary's opinion (a) no withdrawal liability then exists, and (b) upon its effective date, the amendment will not produce withdrawal liability for any Covered Employer. Withdrawal liability, as used herein, shall mean the circumstances whereby a withdrawing Covered Employer would actually incur withdrawal liability to the NEBF under the Act (and, more particularly, the provisions added by the Multi-employer Pension Plan Amendments Act of 1980).

## ARTICLE 6. CONTRIBUTIONS AND COLLECTIONS

**Section 6.1 <u>Covered Employer Contributions</u>.** Each Covered Employer shall pay by the fifteenth of each calendar month (except as provided herein) to the NEBF's designated local collection agent an amount equal to 3% of the gross labor payroll for the preceding calendar month paid to, or accrued by, the Covered Employees, as described in this Article. The Covered Employer agrees that such contributions shall constitute a legally binding, absolute obligation to the NEBF, and such obligation shall not be subject to set-off or counterclaim which the Covered Employer may have for any liability of the NEBF, the Brotherhood, a Local Union, the Association, any Local Chapter thereof, or any Covered Employee.

**Section 6.2 <u>3% of the Gross Labor Payroll</u>.** The term "3% of the gross labor payroll" shall mean:

**6.2.1** as to Covered Employees who are in a bargaining unit represented by the Brotherhood or Local Union, 3% of all wages and other compensation paid to, or accrued by, the Covered Employees in the Brotherhood bargaining unit or the Local Union bargaining unit for services performed for the Covered Employer; or

**6.2.2** as to Covered Employees who are not in a bargaining unit represented by the Brotherhood or Local Union, either (a) 3% of all wages and other compensation which the Covered Employer would pay, or which the Covered Employees would accrue, if the Covered Employees were receiving the wage rate received by the highest number of employees in the appropriate Brotherhood bargaining unit or the Local Union bargaining unit and working the normal straight time hours provided for in the appropriate labor agreement, or (b) 3% of all wages and other compensation paid to, or accrued by, the Covered Employees for services performed for the Covered Employer, if such amount is less than in subsection (a).

**6.2.3** the term "wages and other compensation" shall exclude: the value of non-cash fringe benefits; bona fide contributions made by the Covered Employer to: (a) a trust fund establishing under § 302(c) of the Taft-Hartley Act, or (b) a separate entity or fund which provides retirement benefits or medical benefits; and, bona fide bonuses of an extraordinary nature (i.e., lump sum year-end bonuses, not ordinarily paid as part of a regular payroll period).

**Section 6.3 <u>Coverage</u>.**

**6.3.1** Any Covered Employer who has agreed to contribute to the NEBF on behalf of the employees in a Brotherhood bargaining unit or a Local Union bargaining unit:

(a) shall contribute on behalf of each and every one of its employees in that Brotherhood bargaining unit or that Local Union bargaining unit;

(b) may contribute, either: (i) on behalf of all of its employees not in that Brotherhood bargaining unit or that Local Union bargaining unit (hereafter its "non-bargaining unit employees") provided that contributions are made on behalf of each and every such employee, including, without limitation all office clerical and other "overhead" employees; or, (ii) on behalf of each and every non-bargaining unit employee who meets the following conditions: the employee has earned at least one benefit service credit as defined in the "Plan of Benefits for the NEBF" and, during the current plan year or a prior plan year, at least one-half (1/2) of the employee's total hours of service for that year with any and all Covered Employers were performed in a Brotherhood bargaining unit or a Local Union bargaining unit ("alumni coverage"); and

(c) for purposes of coverage under (b)(i) and (b)(ii), need not contribute on behalf of employees who are included in another unit of employees covered by a collective bargaining agreement with a labor union, if retirement benefits were the subject of good faith bargaining between such Covered Employer and the labor union.

**6.3.2** The Trustees shall permit related organizations (meaning the Brotherhood, Local Unions, the Association and its Local Chapters, joint apprenticeship and training committees, the NEBF, jointly administered trust funds providing health and welfare coverage, pensions, and pooled vacations, similar funds affiliated with the Brotherhood and/or the Association, and State or National Labor Federations or similar organizations in which the IBEW or a Local Union is a member or in

which NECA or a Local Chapter is a member) which so elect and which agree to satisfy the following conditions, to be Covered Employers. Such a related organization:

(a) shall contribute on behalf of each and every one of its employees; or, in the alternative,

(b) shall contribute on behalf of each and every employee who meets the following conditions: the employee has earned at least one benefit service credit as defined in the "Plan of Benefits for the NEBF" and, during the current plan year or a prior plan year, at least one-half (1/2) of the employee's total hours of service for that year with any and all Covered Employers were performed in a Brotherhood bargaining unit or a Local Union bargaining unit ("alumni coverage").

(c) However, if the related organization is a State or National Labor Federation or similar organization in which the IBEW or a Local Union is a member or in which NECA or a Local Chapter is a member, it shall select "alumni coverage."

(d) For purposes of coverage under (a), (b), and (c), any such related organization need not contribute on behalf of employees who are included in another unit of employees covered by a collective bargaining agreement with a labor union, if retirement benefits were the subject of good faith bargaining between such related organization and the labor union.

**6.3.3** For any coverage permitted under Sections 6.3.1(b) and 6.3.2, each Covered Employer must:

(a) execute a written participation agreement as required by the Trustees which binds the Covered Employer to the terms of this Agreement and, thereby, specifies the detailed basis upon which the contributions are to be made to the NEBF;

(b) specify in its written participation agreement whether such Covered Employer is electing coverage of all non-bargaining unit employees or only "alumni coverage," which election, when made, cannot be changed to the other type of non-bargaining unit coverage without a new written participation agreement;

(c) for coverage under Sections 6.3.1(b)(i) and 6.3.2(a), certify in a manner acceptable to the Trustees that it is, in fact, covering all of its employees not in that Brotherhood bargaining unit or that Local Union bargaining unit, except those who may be excluded pursuant to Sections 6.3.1(c) and/or 6.3.2(d);

(d) for "alumni coverage," under Sections 6.3.1(b)(ii) and 6.3.2(b) and (c), certify in a manner acceptable to the Trustees that it is, in fact, covering all of its "alumni" employees, except those who may be excluded pursuant to Sections 6.3.1(c) and/or 6.3.2(d); and

(e) execute such documents as may be required by the Internal Revenue Service, or reasonably required by the Trustees, to enable the NEBF to secure a determination letter of federal tax exemption or to support its tax exemption and/or qualified plan status.

**6.3.4** In administering the types of coverages provided in this Section, the Trustees shall not permit any coverage inclusions or exclusions which would contravene the non-discrimination requirements of the Code and Federal Tax Law. The Trustees are authorized to take any and all steps as outlined herein and otherwise to ensure compliance with such Federal Tax Law requirements, including requiring a Covered Employer to retroactively include in its coverage one or more of its eligible employees who are not highly compensated employees and make contributions on behalf of such employee(s) in accordance with the terms of this Agreement, and such authority is expressly recognized by all Covered Employers which hereby agree to be bound by such actions.

**Section 6.4 Acceptance of Agreement.** Covered Employers shall, by the making of payments to the NEBF, be deemed to have accepted and be bound by this Agreement.

**Section 6.5 NEBF's Designated Local Collection Agent.**

**6.5.1** The NEBF's designated local collection agent (herein referred to as the "local collection agent") may be designated in each locality or area over which a chapter chartered by the Association has jurisdiction, or in such area as the Trustees may designate. Local collection agents shall serve without compensation or allowances, but they shall be reimbursed as reasonable for expenses incurred in connection with the performance of their official duties. However, no expense shall be incurred without the prior approval of the Trustees. Local collection agents shall serve for such terms as the Trustees may decide. Each local collection agent shall be appointed, and may be removed, by the Trustees.

**6.5.2** Each local collection agent shall be covered by a bond covering acts of fraud and dishonesty. The NEBF shall pay the premium on the bond and determine the amount in which it shall be written.

**6.5.3** Each local collection agent shall be instructed and authorized by the Trustees as follows:

(a) to establish and maintain an interest-bearing checking account in the name of the NEBF into which contributions sent to the local collection agent shall be deposited;

(b) to collect from all Covered Employers in their jurisdiction the required contributions at the time and in the manner specified herein and to deposit those contributions in the interest-bearing checking account in a timely manner as instructed by the Trustees;

(c) to remit to the Trustees on or before the 25th day of each month all such contributions collected for the preceding month, all accrued interest from the checking account, and such other forms or reports as required by the Trustees;

(d) to act in strict accordance with all instructions and authority issued by the Trustees and such further

instructions and authority as the Trustees may decide, including instructions with respect to the compiling of statistics; and

(e) to act in strict conformity with this Agreement.

**6.5.4** Interpretations of this Agreement or of the Plan by a local collection agent shall not be binding on the NEBF or the Plan unless confirmed in writing by the Trustees.

**6.5.5** The authority and/or agency of local collection agents is strictly limited to collection of contributions as set forth herein and in the Plan and/or applicable NEBF rules, regulations or policies.

### Section 6.6 Reports and Payments.

**6.6.1** Covered Employers shall pay contributions to the local collection agent or to such depository as the Trustees shall designate, only by check or bank draft, made payable to the order of the NEBF, or such other method of transmitting money as the Trustees may permit. Except as provided herein, all contributions shall become a debt due and owing the NEBF on the last day of each month. The payment of contributions shall be made not later than fifteen (15) calendar days from the date on which the sum became a debt due and owing. All contributions shall be accompanied by a payroll report in such form as may be prescribed by the Trustees.

**6.6.2** If a Covered Employer's workforce did not perform any Covered Employment within a particular month, a payroll report shall nevertheless be filed as provided herein indicating that no Covered Employment was performed. Failure to do so shall subject the Covered Employer to liability for all fees and costs resulting from his failure to file such report.

### Section 6.7 Production of Records.

**6.7.1** Each Covered Employer shall promptly furnish to the Trustees or their authorized representative, on demand, (i) for each such Covered Employer's employees: their names, Social Security numbers, number of hours worked, gross labor payroll, earnings records, W-2s, and time cards, and (ii) for such Covered Employer: all Federal and State payroll or unemployment tax returns, cash disbursements journal, cash receipts journal, payroll journal, canceled payroll checks, other personnel records, other tax reports, corporate minutes, stock certificates or other evidence of ownership, and (iii) such other information as the Trustees may reasonably require in connection with the administration of the NEBF. The Trustees may, by their authorized representative, audit and examine the pertinent employment and payroll records of each Covered Employer, as described above, at the Covered Employer's place of business, whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the NEBF. The Brotherhood or Local Union shall, upon the request of the Trustees, promptly furnish information with respect to an employee's employment status.

**6.7.2** In addition, in the event the Covered Employer does not maintain or otherwise does not have in his possession records of the gross labor payroll paid to, or accrued by, each employee, the Covered Employer agrees that for all types of coverage in order to determine the gross labor payroll for which contributions are required to be submitted to the NEBF, the number of hours of the employee shall be multiplied by the basic hourly wage scale set forth in the appropriate collective bargaining agreement.

**Section 6.8 Collection and Enforcement of Payments.** The Trustees shall have the power to demand, collect and receive Covered Employer payments and all other money and property to which the Trustees may be entitled, and shall hold the same until applied to the purposes provided in this Agreement. The Trustees shall be authorized to adopt and amend a collection (or delinquency) policy or procedure. They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings and the compromise, settlement, or release thereof as the Trustees determine to be in the best interest of the NEBF for the purpose of collecting such payments, money and property. The Trustees may also, where appropriate, join in the collection actions of other funds. No matter respecting the Trustees' rights herein shall, without their written consent, be compromised or settled under, or subject to, the grievance or arbitration procedure established in any local collective bargaining agreement, provided, however, that this provision shall not affect the rights and liabilities of any of the parties to each other under any such collective bargaining agreement.

**Section 6.9 Collection Costs.** In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered:

**6.9.1** to impose on and receive from such Covered Employer all costs of any audit;

**6.9.2** to assess and receive from such Covered Employer as liquidated damages an amount up to twenty percent (20%) of the amount found to be delinquent, in that the failure of the Covered Employer to make the required payment of contributions imposes additional burden and expense upon the Trustees in the collection thereof, in the administration of the NEBF, including but not limited to the communication with said Covered Employer, and, in addition thereto may cause a loss of benefits to Covered Employees, all of which are difficult of accurate ascertainment;

**6.9.3** to assess and receive from such Covered Employer the lost interest from the delinquent amounts, to be calculated at a ten percent (10%) annual rate compounded monthly throughout the period of the delinquency;

**6.9.4** to impose on and receive from such Covered Employer any amounts the Trustees are required to pay for the benefit of an eligible Covered Employee of such Covered Employer, or a Covered Employee who would be eligible except for the failure of such Covered Employer to make required contributions on his behalf;

**6.9.5** to impose on and receive from such Covered Employer all costs, audit expenses, actuarial expenses, and attorneys fees incurred by the Trustees in enforcing the provisions hereof, whether by litigation or otherwise;

**6.9.6** to require such Covered Employer to make weekly deposits of contributions in an amount determined by the Trustees, based on objective standards, provided

that the Trustees have given such Covered Employer reasonable notice of such requirement for weekly deposits, the amount to be deposited, the date such deposits are due and the basis on which the weekly deposit is determined and required;

**6.9.7** to require such Covered Employer to furnish to the Trustees a bond, with reputable surety thereon,

(a) with the Trustees as obligee thereunder,

(b) in an amount, determined by the Trustees, consistent with the anticipated future obligations of such Covered Employer, and

(c) with notice provisions acceptable to the Trustees consistent with purposes of such bond; and/or

**6.9.8** to require such Covered Employer to furnish the Trustees an acceptable personal guaranty and/or irrevocable letter of credit.

**Section 6.10 Effect of Non-Payment.** Non-payment by any Covered Employer of any contribution or other moneys owed to the NEBF shall not relieve any other Covered Employer from his or its obligation to make required payments to the NEBF.

**Section 6.11 Violation of Agreement.** Failure of a Covered Employer to comply with this Agreement or with the rules regulations, or policies adopted by the Trustees shall constitute a violation of this Agreement and of the Covered Employer's collective bargaining agreement or other agreement with the Brotherhood or a Local Union, provided that neither the Association nor other Covered Employers shall be responsible for such violation.

**Section 6.12 Refund of Contributions.** The NEBF will refund mistaken Covered Employer contributions that were paid to the NEBF within the year prior to the date the Trustees first became aware that the contributions were made in error. Contributions paid to the NEBF more than one year prior to the date the Trustees first became aware that the contributions were made in error shall not be refundable.

## ARTICLE 7. TERMINATION OF NEBF

**Section 7.1 Conditions of Termination.** This Trust shall cease and terminate upon the happening of any one or more of the following events:

**7.1.1** the Trust shall, in the opinion of the Trustees and the National Board, upon advice of the Trust's actuary, be inadequate to carry out the intent and purpose of this Agreement, or be inadequate to meet the payments due or to become due under this Agreement and under the Plan;

**7.1.2** by written action of both of the Parties; or

**7.1.3** as may be otherwise provided by law.

**Section 7.2 Procedures in the Event of Termination.** In the event of termination, the Trustees shall, subject to National Board approval:

**7.2.1** make provision for the payment out of the Trust of any and all obligations of the NEBF, including expenses incurred up to the date of termination of the Trust and the expenses incidental to such termination;

**7.2.2** arrange for a final audit and report of their transactions and accounts, for the purpose of termination of their Trusteeship;

**7.2.3** give any notice and prepare and file any reports which may be required by law; and

**7.2.4** distribute the remaining assets among Participants and Beneficiaries in a manner and for a purpose as the Trustees deem proper and in accordance with applicable law.

**Section 7.3 Limitations.** No part of the corpus or income of said Trust shall be used for, or diverted to, purposes other than for the exclusive benefit of the Participants and Beneficiaries and their families, dependents and/or legal representatives, or the administrative expenses of the Trust or for other payments in accordance with the provisions of this Agreement or the Plan. Under no circumstances shall any portion of the corpus or income of the NEBF, directly or indirectly, revert or accrue to the benefit of any Covered Employer, the Association, the Brotherhood, a Local Chapter, or a Local Union.

## ARTICLE 8. MISCELLANEOUS

**Section 8.1 Termination of Covered Employer.** A Covered Employer may, in the discretion of the Trustees, cease to be a Covered Employer and the Trustees may refuse to accept contributions and may deny prospective participation in the NEBF by the Covered Employer and its employees when the Trustees conclude that such participation is no longer in the best interests of the Participants and Beneficiaries of the NEBF or when such Covered Employer (a) is no longer obligated to make contributions to the NEBF; (b) is delinquent in contributions or reports to the NEBF; (c) fails upon request to furnish the NEBF with a copy of such Covered Employer's collective bargaining agreement or other written agreement requiring contributions to the NEBF; (d) agrees to a collective bargaining agreement or other written agreement, the terms of which the Trustees determine are not consistent with this Agreement or the Plan; or (e) fails to agree to be bound by the terms and provisions of this Agreement, and any amendments and modifications hereof.

**Section 8.2 Withdrawal of Covered Employers.** Each Covered Employer agrees to notify the NEBF in writing should such Covered Employer cease to have an obligation to submit contributions to the NEBF, or if such Covered Employer conveys its assets to another party who does not have an obligation to contribute to the NEBF. In the event such a conveyance of assets does occur, the conveying Covered Employer also agrees to provide the NEBF with the name, address and chief executive officer of the receiver of its assets.

**Section 8.3 Vesting of Rights and Beneficial Interests.** The Trustees shall establish standards for vesting of benefits which conform to no less than minimum standards required by law. No Covered Employee, Participant, Beneficiary, Covered Employer, Local Union, or other person shall have any vested interest or right, title, or other interest in or to the NEBF or any part thereof or any property of the NEBF, except as may be required by the Act or Code, be provided by the Trustees, or be specifically provided for in the Plan. There shall be no pro rata or other distribution of any of the assets of the NEBF for any purpose or reason, except as required by law, as a result of any Local Union, Covered Employer or group of Covered Employers, Covered Employees, or Participants and their Beneficiaries, ceasing their participation in the NEBF.